**Kenneth M. DIXON, Plaintiff,**

v.

**The MAYOR AND COUNCIL OF the CITY OF WILMINGTON, a municipal corporation of the State of Delaware and Harry F. Manelski, individually and in his capacity as Chief of Police of the City of Wilmington, Defendants.**

**Civ. A. No. 78–470.**

United States District Court, D. Delaware.

May 4, 1981.

Richard Allen Paul, Wilmington, Del., for plaintiff.

Jeffrey S. Goddess, City Sol., Michael P. Reynolds, and Marc Abrams, Asst. City Sol., Wilmington, Del., for defendants.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

In this civil rights action, a former policeman, Kenneth M. Dixon ("plaintiff"), brings suit against the Chief of Police, Harry Manelski, and the Mayor and City Council of Wilmington ("defendants"), on the ground that his dismissal from the police force violated his right to procedural due process. On defendants' motion for summary judgment,[1] the important though narrow issue before the Court is whether a public employee who has successfully completed a mandatory probationary period of employment and is subsequently placed on disciplinary probation has a property interest in continued employment which would require that his employer afford him due process in discharging him. Having examined the formal rules and the past practices of the police department, the Court concludes that the plaintiff had no property interest at stake, and grants the motion for summary judgment.

---

1. Both plaintiff and defendants moved for summary judgment; plaintiff's motion was withdrawn at oral argument.

## I. *Factual Background*

There is no dispute as to the events leading up to plaintiff's discharge from the force. Plaintiff joined the police force in September 1973, and in 1975 successfully completed the mandatory eighteen-month probationary period for ·new recruits. Between January 1975 and July 1976, however, plaintiff was disciplined for thirteen infractions of departmental regulations, six of which involved motor vehicle accidents resulting from plaintiff's negligence. *See* Manelski Affidavit ¶¶ 4–5. Plaintiff was cited for insubordination in July 1976, and under the disciplinary procedure set out in the regulations, *see* Rules 324–328, Manelski Affidavit, Exhibit C, was given the choice of accepting "summary punishment" by his superior or having a hearing before a "Trial Board" comprised of three senior police officers, who would decide on disciplinary action. Plaintiff elected to have a Trial Board hearing. The Trial Board ordered, *inter alia*, that plaintiff be put on probation for one year, beginning September 2, 1976. *See* Dixon Deposition (1/19/79), Exhibit 3.

Three months later, plaintiff was again involved in an accident as a result of his own negligence. Another Trial Board was convened, and the Board dismissed plaintiff from the force. *See id.* Exhibit 4. Departmental regulations provide that Trial Board decisions may be appealed to a three-member Appeal Board, to which the Commissioner of Public Safety, the Police Chief, and the patrolmen's union each appoint a representative. (The Commissioner and the Chief can choose to sit on the Board personally). *See* Rule 375, Manelski Affidavit, Exhibit C. Plaintiff appealed the decision to an Appeal Board, requesting "one more chance." *See* Dixon Deposition (1/19/79) at 38. The Appeal Board, on which Chief Manelski sat, decided to reinstate plaintiff subject to certain conditions, most important of which was a one-year probation beginning January 27, 1977. *See id.* Exhibit 5. In the ten months that followed, plaintiff was disciplined on a number of occasions for incidents which included failure to handle evidence properly, and brutality toward a prisoner.

The incident that prompted plaintiff's dismissal involved his lying to officers who were conducting an internal investigation. On November 4, 1977, a woman filed a complaint with the department alleging that plaintiff had raped her. Chief Manelski immediately ordered an internal investigation. In the course of the investigation, plaintiff was questioned at length about an evening that he admitted he had spent with the complainant, and in particular about whether he had at any point put handcuffs on her. He repeatedly denied having done so, even after he was told that a polygraph test he had taken showed he was lying. After about an hour of interrogation, plaintiff finally admitted having put handcuffs on her, though he still denied that he had raped her. Chief Manelski was apprised of the status of the internal investigation late in the evening of November 4, and he ordered plaintiff suspended. On November 7, 1977, Manelski called plaintiff to his office and dismissed him from the force for failure to cooperate with an internal investigation. Manelski Deposition at 35–36.

In 1978, plaintiff brought this action under 42 U.S.C. § 1983, alleging that defendants' failure to afford him a pre-termination hearing violated his rights to procedural due process under the Fourteenth Amendment to the United States Constitution. In a second count, the complaint alleges that plaintiff's dismissal breached his employment contract.

## II. *Legal Issues*

Defendants argue that summary judgment should be granted on the due process count of the complaint, on the ground that plaintiff did not have a "property interest" in continued employment. Plaintiff, on the other hand, contends that he was a "permanent employee" at the time of his dismissal, under the applicable rules and regulations, and therefore had a property interest.

The standard to be satisfied by a party moving for summary judgment is a stringent one. Under Rule 56, in order to prevail, the moving party must show that he is

entitled to a judgment as a matter of law, and that there is no genuine issue of fact. *Fairbanks, Morse & Co. v. Consolidated Fisheries Co.*, 190 F.2d 817, 824 (3d Cir. 1951).

 The issue of law in this case involves the murky area of alleged property interests in employment not based on explicit contractual provisions or statutes. The Supreme Court has made clear that while an employee's "unilateral expectation" of continued employment does not rise to the level of a property interest, *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), such interests may be "secured by existing rules or understandings," *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). The Court is to look to state law in determining whether a property interest exists. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Because there is no state statute or case law on point, *see Skomorucha v. Wilmington Housing Authority*, 504 F.Supp. 831 at 834–35 (D.Del., 1980), the Court must make its own determination as to whether this case involves a property interest, on the basis of the police department's rules and practices.

 This Court has consistently held that public employees have a property interest if the employer has set out guidelines as to grounds for discharge. *See, e. g., Aiello v. City of Wilmington*, 426 F.Supp. 1272, 1286 (D.Del.1976); *Morris v. Board of Education of Laurel School District*, 401 F.Supp. 188, 209 (D.Del.1975). Rule 322 of the Police Department Rules and Regulations, *see* Manelski Affidavit, Exhibit C, lists specifically seventy-seven grounds on which disciplinary charges may be brought against a policeman. The Rule concludes with a general provision that conduct "prejudicial to the good order, discipline, or efficiency of the Bureau of Police" is also prohibited. *See id.* Rule 322 (78). The clear implication is that non-probationary members of the force can be dismissed only for cause, and

thus do not serve at the "will and pleasure" of the Chief. Under *Aiello, supra,* they have a property interest in their jobs.

The plaintiff in this action was, however, on disciplinary probation at the time of his dismissal. The parties agree that "rookies" on the force have no property interest during the eighteen-month initial probation on the job. The issue here, then, is whether the status of a patrolman on disciplinary probation is like that of a rookie or that of a non-probationary patrolman with respect to his interest in continued employment.

 The fact that plaintiff's status was officially described as "probationary" does not preclude the Court from looking further to determine whether he might nevertheless have had a property interest. *See, e. g., Doe v. Anker*, 451 F.Supp. 241, 248 (S.D.N.Y.1978); *Daniel v. Porter*, 391 F.Supp. 1006, 1010 (W.D.N.C.1975). The critical question is whether a patrolman on disciplinary probation serves at the will and pleasure of the Chief. *See Bishop v. Wood*, 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Plaintiff contends that, because the departmental rules do not specifically provide that the regulations pertaining to punishment of regular patrolmen do not apply to. patrolmen on disciplinary probation, plaintiff had the same interest in continued employment as regular patrolmen. This argument is unpersuasive, in that the rules do not fully set out all departmental practices. For example, though it is widely known (and conceded by plaintiff) that rookies have no right to a Trial Board before being discharged, it is not specified in the rules. *See* Manelski Affidavit, Exhibit C, Rules 305–309. The Court must determine, then, whether there were any "mutually explicit understandings," *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), as to the status of patrolmen on disciplinary probation, including any understandings based on well-established practice, in assessing whether plaintiff had a property interest.[2]

---

**2.** Plaintiff seems to argue that the Court may look beyond the Rules and Regulations to past

practice only if such practice confirms the existence of a property interest rather than cast-

The record shows that the Chief of Police has wide discretion in disciplining patrolmen on probation. In his affidavit, Manelski lists five patrolmen who, in the last ten years, were summarily dismissed while on probation, at least some of whom were on disciplinary probation. *See* Manelski Affidavit ¶ 12; Manelski Deposition at 58–59. Moreover, Manelski testified, both in his affidavit and at his deposition, that the Chief's authority to dismiss any patrolman on probation, without a Trial Board, is well known. *See id.* Manelski Affidavit ¶ 13. Neither the plaintiff's affidavit nor his deposition contraverts these assertions with any specificity. Plaintiff's statements as to the Chief's authority were vague and contradictory. For example, he stated in his deposition, "[a] probationary officer is fired by the discretion of the Chief, true, but . . . [t]hey are going to convene a Trial Board." Dixon Deposition (1/19/79) at 106. Plaintiff's statements establish at most that he had a unilateral expectation that he would receive a Trial Board. The Court must, therefore, take as true Manelski's statements about departmental practice concerning patrolmen on disciplinary probation. *See Fed.R.Civ.P.* 56(e). Manelski's statements make clear that, unlike regular patrolmen, patrolmen on disciplinary probation serve at the Chief's will and pleasure. *Cf., Doe v. Anker, supra* at 249 n. 17 (in absence of special law, imposition of disciplinary probation would "extinguish all tenure rights"). It follows, therefore, that plaintiff had no property interest.[3]

The Court, therefore, grants defendants' motion for summary judgment as to the due process count of the complaint. The action is dismissed for lack of jurisdiction over the remaining count.

ing doubt on it. Answering Brief at 5 n. 4. However, no authority is cited for this proposition, and logic does not support it.

3. Though plaintiff may have been deprived of a property interest by virtue of being placed on disciplinary probation, he was given a Trial Board hearing at that time, and thus the requirements of due process were satisfied.