Victor W. HARRIS, Plaintiff,

v.

CITY OF WILMINGTON, et al., Defendants.

Civ. A. No. 84–351–JJF.

United States District Court, D. Delaware.

Sept. 29, 1986.

Gary W. Aber, of Heiman & Aber, Wilmington, Del., for plaintiff.

Michael P. Reynolds, Office of the City Sol., Wilmington, Del., for defendants.

FARNAN, District Judge.

Plaintiff Victor W. Harris, a patrol officer with the Wilmington Police Department, brought this civil rights action against former Chief of Police Dennis Regan,[1] and the City of Wilmington, on the ground that his name was wrongfully removed from the Police Department's eligibility list for promotion from patrolman to sergeant. Plaintiff's five count Complaint alleged: (1) racial discrimination in violation of 42 U.S.C. § 1981; (2) actions constituting a Bill of Attainder; (3) denial of equal protection in violation of 42 U.S.C. § 1983; (4) deprivation of a property interest without due process in violation of 42 U.S.C. § 1983; and (5) slander. Following extensive discovery by both sides, defendants filed this Motion for Summary Judgment.[2] Plaintiff now concedes that his sole viable claim for relief rests upon the allegation that he was deprived of a property interest without due process. Plaintiff's Answering Brief, at 1. Therefore, defendant's Motion for Summary Judgment on Counts I, II, III and V is granted. Still confronting the Court is defendant's Motion for Summary Judgment on Count IV, plaintiff's procedural due process claim.

## I. FACTUAL BACKGROUND.

The events leading up to Patrolman Harris' removal from the promotion list are plain, simple and virtually undisputed. Patrolman Harris joined the Wilmington Police Department in 1973 and since that time has held the rank of patrol officer. In 1983, he applied for a promotion to sergeant. Pursuant to revised General Order No. 78–3 ("General Order"), which governed the promotional system of the Police Department, Patrolman Harris met the seniority criterion, took the promotional test, was rated by two supervisors, and interviewed by Chief Regan. Based on the point ratings prescribed by the General Order, plaintiff ranked sixth on the final promotion list published on April 15, 1983. That promotion list was valid for one year, until April 15, 1984, or until the next promotion list was prepared.

1. Dennis Regan was the Chief of Police when Harris was appointed to the promotion eligibility list, and he was also Chief of Police when Harris was removed from that list. As of the filing of this Complaint, Regan was no longer the Chief of Police. For the purposes of this Opinion, however, Regan is referred to throughout as Chief Regan.

2. Under Local Rule 3.1E, counsel may "call to the Court's attention and briefly discuss pertinent cases decided after a party's final brief is filed or after oral argument." On November 1, 1985, counsel for plaintiff, presumably utilizing Rule 3.1E, submitted to this Court additional legal memoranda. Memoranda were therafter submitted on several occasions. The last such occasion was May 14, 1986.

The events that culminated in plaintiff's removal from the promotion list occurred during the evening of April 16, 1983. Patrolman Harris was working at the Police Department in the Turnkey office. As Turnkey, he was the officer responsible for handling, among other things, civilian telephone calls. At approximately 11:30 p.m., he received a telephone complaint from a man who identified himself as David Williams, and who gave his address as 818 West Ninth Street. Williams reported that he had just returned home to find his girlfriend in bed with an on-duty Wilmington police officer. Williams further stated that the officer was armed and was apparently driving police van number 49, which was parked in front of the house. After ascertaining that the police officer was leaving the house, Patrolman Harris asked Williams why he had called the Department. According to Patrolman Harris, Williams responded that "he wanted to know why the officer was in his house if the officer was supposed to be working." Plaintiff's Exhibit ("P.Ex.") A, at 1. Unable to answer this rather pointed question, Patrolman Harris then asked Williams whether he wished to speak with a supervisor or file a complaint. Patrolman Harris alleges that Williams declined to do either, so he suggested that Williams discuss the situation with his girlfriend. At that point, the conversation ended. P.Ex. A, at 1.

According to the Police Department, Patrolman Harris then called the Police Communications Division and determined that van number 49's driver, Officer James Church, was supposed to be on duty in another section of the City. Defendant's Answers to Plaintiff's Interrogatories, D.I. 16, Interrogatory No. 4. Patrolman Harris neither reported this information to his supervisor nor took any other action regarding Williams' phone call until requested to do so in connection with the Police Department's internal investigation of the incident.

In the meantime, approximately one-half hour after Patrolman Harris received Williams' call, Sergeant James Strawbridge and Patrolman Robert Partlow were dispatched to the Williams residence in response to a report of a domestic disturbance between Williams and his girlfriend. Defendant's Opening Brief, Ex. 3, at 1. The officers found Mr. Williams and his girlfriend, Lillian Harden, embroiled in a heated confrontation. *Id.* Under questioning, Williams revealed that the fight resulted from the fact that he had returned home to find an on-duty police officer in bed with his girlfriend. Williams' girlfriend identified the officer as James Church, and Williams again provided the van number. Williams also told the officers that he had called Police Headquarters but that the officer who answered the phone had advised him that if the officer was on his lunch break, he was free to do as he pleased. Defendant's Ex. 4, at 1.

The responding officers reported the entire incident to their supervisor, who in turn notified the Police Internal Affairs Division ("I.A.D."). The I.A.D., which investigates claims of police misconduct, then instituted an investigation into Patrolman Harris' failure to report Williams' call to his supervisor. The investigation culminated in disciplinary charges being brought against Harris for violation of the responsibilities established by Chapter 3, Section 302.1 of the Rules and Regulations of the Bureau of Police of the City of Wilmington. The specific charge against Harris recited that:

> On 16 April 83, Ptlm. Harris was working the 2300 x 0800 shift, "B" Platoon, Patrol Division. At this time Ptlm. Harris was assigned to the house sergeant's office as a Turnkey. At approximately 2350 hours, Ptlm. Harris received a telephone call from a Mr. David Williams. Mr. Williams lodged with Ptlm. Harris a serious allegation relative to the possible misconduct of an on-duty Wilmington police officer. Additionally, Mr. Williams told Ptlm. Harris that the alleged misconduct had just occurred. Ptlm. Harris negligently ignored the obligation of his rank to forward Mr. Williams' allegation to his immediate supervisor or any competent authority. As the result of Ptlm.

Harris' negligence, supervisory personnel were unable to immediately initiate an investigation into an extremely hazardous situation. Defendant's Opening Brief, Ex. 6.

Pursuant to Police Rules and Regulations, a Trial Board was convened on May 10, 1983, to hear the charges lodged against Harris. The Trial Board sustained the charges against Harris and sentenced him to forty days of penalty time and one year of disciplinary probation. Plaintiff's Answering Brief, at 3. Patrolman Harris did not contest the Trial Board's finding of guilt, but in accordance with Departmental Regulations, he appealed the severity of his punishment to an Appellate Board. The three member Appeal Board, which consisted of Chief Regan and two other persons, conducted a hearing on May 20, 1983. Later that day, the Board issued its decision upholding the Trial Board's findings and disciplinary recommendations. *Id.* Throughout these disciplinary proceedings, Patrolman Harris was represented by counsel.

Subsequent to the appeal board's decision, Harris elected to serve his penalty time by means of a forty-day suspension. On June 1, 1983, Chief Regan issued Special Order No. 83–37, which set Harris' suspension period as June 8, 1983, to August 8, 1983, and his disciplinary probation period as May 10, 1983, to May 10, 1984. Harris served his suspension and returned to work at the Police Department on August 14, 1983. Defendant's Opening Brief, at 6.

The operative facts in the present dispute arose approximately two months after Harris had served his suspension and returned to work, but while he continued to occupy the status of a probationary officer. At this time, Harris' name had moved up on the sergeant's promotional list due to other promotions made within the Department. Chief Regan, recognizing that Harris might soon be eligible for promotion to sergeant, and concerned about his competency as a supervisor in light of the serious breach of departmental regulations that re-

sulted in Harris' suspension and probation, then consulted Assistant City Solicitor Jerome M. Capone regarding his options given Harris' position on the promotion list. Capone advised Chief Regan that the General Order contained two provisions for bypassing police officers slated for promotion. D.Ex. 7. The first such mechanism, the Rule of Three, gave the Chief the discretion to select any one of the top three candidates from the list; however, under the Rule of Three, no one candidate from among the top three could be passed over more than twice before the Chief was compelled to promote that person at the next available opportunity. This provision is codified in the General Order, which states: "Standard appointments will be made in the order of the standing on the approved eligibility list. The exception to the above is that the Chief may invoke the Rule of Three. In this case, any of the top three (3) names on the list are eligible for promotion. Any person passed over twice must be promoted the third time." Plaintiff's Opening Brief at Exhibit H (Revised General Order No. 78–3 at I.F.(2) & (3)). The second alternative in the General Order permits the Chief to permanently pass over a candidate on the promotional list. This provision states that: "The finished promotional list may be reviewed at any time by the Chief of Police. If the review indicates that the efficency and/or conduct of any member on the promotional list has decreased to such an extent that he/she should not be considered, his/her name will be passed over, making him/her ineligible for the current promotional year." Plaintiff's Opening Brief, Exhibit H (Revised General Order No. 78–3, ¶ III, at 7). Capone cautioned the Chief that under the terms of the latter provision, any decision to bypass a candidate should be tied to specific instances of unacceptable conduct. Capone further advised Chief Regan to notify, meet with, and afford the candidate an opportunity to explain his conduct before making a final decision to bypass the candidate for promotion. D.Ex. 7.

On October 18, 1983, Chief Regan notified Patrolman Harris that he was consid-

ering removing Harris' name from the promotional list due to his disciplinary record over the previous year. This letter also offered Harris an opportunity to meet with the Chief and Inspector of Operations Donald Payne ("Inspector Payne") on October 24, 1983. Inspector Payne, the Chairman of the Trial Board which considered Harris' disciplinary matter, Harris, and Chief Regan met on October 24, 1983. Patrolman Harris was not represented by counsel at the meeting, and did not present any witnesses; however, Harris was afforded the opportunity to speak in his own behalf. (Regan Dep., p. 86; Harris Dep., p. 26; Payne Dep., p. 24). Neither the briefs nor the depositions provide a complete description of what transpired during the meeting. However, a review of the depositions indicates that Patrolman Harris and Chief Regan discussed the disciplinary action, the punishment meted out, and Harris' possible removal from the eligibility list. On the following day, Chief Regan informed Harris by mail that his name had been removed from the 1983 promotional list.

## II. LEGAL ISSUES.

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In deciding a motion for summary judgment, the District Court does not decide issues of fact, rather the Court's role is to determine whether any genuine issue of material fact exists. *Ness v. Marshall*, 660 F.2d 517, 519 (3rd Cir.1981). Because the basic facts regarding the City ordinances and policies creating or denying Harris' right to a promotion and the nature

of his notice by and meeting with Chief Regan prior to the removal of his name from the eligibility list are not in dispute, the Court is prepared to decide the legal issues.[3]

■ The central issue in this case is whether Harris had a constitutionally protected property interest in the promotion that would ultimately have followed had his name remained on the promotion eligibility list. The Supreme Court clearly stated in *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), that employees have property interests in employment-related benefits when state laws, or "existing rules and understandings" secure the interest, and support a "legitimate claim of entitlement." *Id.; Perry v. Sinderman*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 593 (1972). Where such support is absent, an employee's mere subjective expectancy is insufficient to raise the interest to the level of a constitutionally protected property interest. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

■ A claim of entitlement worthy of due process protection under the Fourteenth Amendment must originate in state law. Under certain conditions, the terms of an individual's employment, as governed by applicable state law, can create a constitutionally protected property interest. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Yet a property interest in public employment need not be based on statutes or regulations; it may also be secured by an implied promise, or by the customs, policies and practices of a local government unit. *Stana v. School District of Pittsburgh*, 775 F.2d 122, 126 (3rd Cir.1985) (citing *Perry v. Sinderman*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–700, 33 L.Ed.2d 570 (1972)). Consequently, any inquiry into the

---

**3.** In determining whether the removal of Harris' name from the promotion list violated his constitutional rights, the Court does not rely on the facts that led to Harris' disciplinary probation. Therefore, the Court rejects plaintiff's argument that his version of the April 16, 1983 incident must be accepted as true for purposes of summary judgment. Plaintiff has challenged the constitutionality of the process used to remove him from the eligibility list, not the constitutionality of the disciplinary process itself. Therefore, the pertinent facts are those which determine whether he had a constitutional right to due process prior to his removal from the eligibility list.

legitimacy of plaintiff's claimed property interest must focus on the rules, regulations, and understandings that governed promotions within the Wilmington Police Department.

■ In *Connell v. City of Wilmington,* this Court held that permanent, non-probationary employees within the Wilmington Bureau of Fire have a protected property interest in a merit-based promotion system. *Connell v. City of Wilmington,* No. 76–182, Slip Op., at 8, 9 (D.Del. May 3, 1977); *Cf. Aiello v. City of Wilmington,* 426 F.Supp. 1272, 1286 (D.Del.1976). The source of the protected interest at stake in *Connell* originated in Section 7–102 of the City Charter, which mandates that promotions within the classified service—of which both the fire and police departments are a part—be made on the basis of merit and fitness. *Connell, supra,* at 9 (citing Wilmington City Charter § 7–102). These requirements culminated in the promulgation of General Order 78–3, which plaintiff acknowledges to be the governing standard in this case. Plaintiff's Answering Brief at 17. This merit-based promotion scheme sets forth the rules and regulations governing promotions within the Police Department. General Order 78–3 establishes precisely the sort of rules, regulations, and understandings that create a legitimate expectancy sufficient to merit some due process. *See Connell, supra,* at 8, 9. Accordingly, the precedents of this Court clearly point to the conclusion that non-probationary members of the Wilmington police force have a protected property interest in a merit-based promotion system. This protected interest is the predicate for the department's obligation to comply with the rudiments of procedural due process. *Stana,* 775 F.2d at 125.

■ This Court need not determine the degree of process to which non-probationary employees are entitled under the General Order. Plaintiff's reliance on *Connell* is misplaced, and his claim to a protected interest is seriously compromised by his probationary status. In *Dixon v. Mayor and Council of the City of Wilmington,* 514 F.Supp. 250 (D.Del.1981), this Court addressed the question whether a Wilmington police officer on disciplinary probation had a property interest in continued employment with the Police Department. *Id.* at 253. This Court squarely held, in a ruling that should be dispositive of any questions in this case, that unlike non-probationary patrol officers, patrol officers on disciplinary probation serve at the Chief's will and pleasure. *Id.* at 254. *See also, Tautfest v. City of Lincoln,* 742 F.2d 477, 480–81 (8th Cir.1984). It follows from this that a patrol officer on disciplinary probation has no property interest in continued employment with the Police Department. *Id.* at 254. It is axiomatic that if a probationary patrol officer has no cognizable property interest in the right to employment itself, he can hardly claim to have a cognizable property interest in promotion. Plaintiff has not cited, nor has this Court found, any authority that stands for the proposition that an employee on disciplinary probation has a legitimate claim of entitlement to promotion. Therefore, it is the Court's opinion that under *Dixon,* plaintiff's status as a probationary employee stripped him of any property interest that might otherwise have attached to his presence on the promotional list. However, this conclusion does not prevent the Court from probing the employment relationship to determine whether plaintiff might have acquired a property interest in promotion based on some "mutually explicit understandings", *see Perry v. Sinderman,* 408 U.S. at 601–03, 92 S.Ct. at 2699–2700; *Stana v. School District of Pittsburgh,* 775 F.2d at 126, 127; *Dixon v. City of Wilmington,* 514 F.Supp. at 253, capable of invoking the requirements of procedural due process. A review of the record in this case indicates that no such understanding existed. Plaintiff admitted in his deposition his belief that General Order 78–3 vests in the Chief the authority to remove from the promotion list an officer who has indicated through his on-duty behavior the inability to supervise other police officers. Harris Dep., at 12. Further, plaintiff did not dispute the Chief's discretion to remove

someone from the promotion list based upon the Chief's belief that such person is unqualified for promotion. *Id.* Viewed in the light most favorable to the plaintiff, his deposition establishes that he had, at best, only a unilateral expectation that his promotion would proceed without impediment. *Cf. Dixon v. City of Wilmington, supra,* at 254. It therefore follows that plaintiff had no property interest in remaining on the promotion list.

Public policy considerations strongly support the conclusion that a patrol officer's property interest in remaining on the promotion list is predicated on his or her remaining a member in good standing in the Police Department. In general, a promotion is based upon an employee's demonstrated ability to competently perform the work currently assigned, and the further decision, whether made by an objective or a subjective process, that the employee has the qualifications necessary to competently perform at a higher level of responsibility. This policy has particular significance in the area of public employment because public employees, especially police officers, are entrusted with the service and protection of the public. To find that a qualified candidate for promotion has a protected property interest in his or her continued eligibility for promotion, even after the officer's conduct has deteriorated to the point where he or she has been placed on disciplinary probation and no longer possesses a protected property right to continued employment, would make a mockery of the promotion process and of the constitutional protections afforded only to permanent public employees.

Harris' disciplinary probation demonstrates why recognizing a disciplinary probationer's property interest in promotion is abhorrent to public policy. On April 16, 1983, Harris was working as a Turnkey, a position of limited responsibility requiring him to answer all telephone calls from citizens. While performing these duties, he admittedly received a complaint that another officer was engaging in misconduct of a sexual nature amounting to neglect of duty. Harris Dep. at 35; D.E. 5. Al-though Harris had the officer's van number and location, he did not report the complaint to his superiors. *Id.* The fact that a volatile domestic situation existed at the Williams household for as long as it did was due to Harris' irresponsible failure to immediately report the complaint of officer misconduct to his superior officer. Domestic violence did not erupt until the errant officer had returned to his patrol duty in a different district of the City; however, Williams' subsequent confrontation with his girlfriend might have been prevented by timely Department action. These facts highlight the absurdity of rewarding an officer involved in such an incident with a promotion to the more responsible position of sergeant. Such would be the case if this Court found that Harris, a probationary employee with no property interest in continuing in his current position, had a property interest in being promoted to a more responsible one. Therefore, the Court finds that officers on the promotion eligibility list have no property interest in remaining on that list if they are on disciplinary probation.

## III. CONCLUSION.

The Court is prepared to decide the legal issues presented by this Motion for Summary Judgment since the facts underlying the Wilmington Police Department's creation of its promotion process are not in dispute. Based on the City ordinances and Department policies establishing the Police Department's promotional system, patrol officers who are appointed to the approved eligibility list have a property interest in that list and in a subsequent promotion if sufficient vacancies occur. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). However, just as disciplinary probationers do not have a property interest in continued employment on the Wilmington Police Force, *Dixon v. Mayor and City of Wilmington,* 514 F.Supp. 250, 253–54 (D.Del. 1981), disciplinary probationers on the ap-

proved eligibility list have no property interest in remaining on that list or in a promotion. Accordingly, since plaintiff had no property interest in remaining on the promotion eligibility list, no process was due. It is therefore unnecessary for the Court to reach the issue whether the hearing plaintiff received prior to his removal from the list conformed to the requisites of due process. An Order will be entered consistent with this Opinion.