# In the United States Court of Federal Claims

No. 11-543L

(Filed: May 30, 2013)

* * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| **LONE STAR INDUSTRIES, INC.,** | **United States Court of Federal Claims Rules 12(b)(6), 59, 60; Motion for New Trial or to Alter or Amend Judgment; Fifth Amendment Taking; La. Civ. Code Ann. art. 690, et seq.; Property Interest; Predial Servitude.** |
| **Plaintiff,** |  |
| **v.** |  |
| **THE UNITED STATES,** |  |
| **Defendant.** |  |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

David M. Flotte, Edward F. Kohnke, and Joseph E. Lee III, Preis & Roy, PLC, 601 Poydras Street, Suite 1700, New Orleans, LA, 70130, for Plaintiff. David S. Rifkind, Lone Star Industries, Inc., of Counsel.

Ignacia S. Moreno and Charlotte M. Youngblood, United States Department of Justice, Environment & Natural Resources Division, 601 D Street, NW, Washington, D.C., 20004, for Defendant. David R. Dyer and Jennifer Labourdette Burck, United States Army Corps of Engineers, of Counsel.

_____

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR NEW TRIAL OR ALTERNATIVELY TO ALTER OR AMEND THE JUDGMENT
_____

**WILLIAMS**, Judge.

This Fifth Amendment takings case comes before the Court on Plaintiff's motion for new trial, or alternatively, to alter or amend the judgment in Lone Star Industries v. United States, 109 Fed. Cl. 746 (2013). Lone Star Industries, Inc. ("Lone Star") contends that the Court erred in its application of Rule 12(b)(6), the navigational servitude, and Louisiana law. Because the Court finds no circumstances that warrant reconsideration under Rule 59 or Rule 60, Plaintiff's motion is **DENIED**.

## Background

Lone Star, a cement importer, owns a deep-draft terminal abutting the Michoud Canal in New Orleans, Louisiana. Plaintiff filed a complaint in this Court alleging that the 2009

1

closure of the Mississippi River Gulf Outlet ("MRGO") effected a taking of deep-draft access to its property, asserting its right to perpetual deep-draft vessel access to 36 feet. On February 27, 2013, this Court dismissed this action ruling:

> Plaintiff has failed to allege a compensable property interest in deep-draft access to its property under Louisiana or Federal Law. Plaintiff has likewise failed to allege that its facilities or operations were directly regulated by the Government's closure of the MRGO. As such, Plaintiff has failed to allege facts giving rise to a plausible physical or regulatory takings claim.

Lone Star, 109 Fed. Cl. at 759.

In its motion for reconsideration, Plaintiff alleges that this Court erred in granting the Government's 12(b)(6) motion to dismiss by failing to accept Plaintiff's allegations. In addition, Plaintiff claims the Court improperly relied on a navigational servitude defense and misapplied Louisiana law.

## Discussion

## Rule 59

Rule 59 of the Rules of the United States Court of Federal Claims ("RCFC") governs motions for new trials, reconsideration, and altering or amending a judgment. Rule 59(a) provides:

> *(1) Grounds for New Trial or Reconsideration.*
>
> The court may, on motion, grant a new trial or a motion for reconsideration on all or some of the issues–and to any party–as follows:
>
> **(A)** for any reason for which a new trial has heretofore been granted in an action at law in federal court;
> **(B)** for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or
> **(C)** upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States.

RCFC 59(a)(1). "The decision whether to grant reconsideration lies largely within the discretion of the district court." Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990). "Reconsideration is not to be construed as an opportunity to relitigate issues already decided." Dairyland Power Coop. v. United States, 106 Fed. Cl. 102, 104 (2012) (citing Shell Petrol., Inc. v. United States, 47 Fed. Cl. 812, 814 (2000)). To this end, "[t]he movant may not merely recapitulate cases and arguments considered by th[e] court before rendering its original decision." Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 301 (1999) (internal quotations omitted).

2

A Rule 59 motion "must be based upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." Fru-Con Constr. Corp., 44 Fed. Cl. at 300 (quoting Bishop v. United States, 26 Cl. Ct. 281, 286 (1992)); see also Froudi v. United States, 22 Cl. Ct. 290, 300 (1991). More precisely, "the moving party must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice." Matthews v. United States, 73 Fed. Cl. 524, 526 (2006) (citing Griswold v. United States, 61 Fed. Cl. 458, 460-61 (2004)). Manifest means "'clearly apparent or obvious.'" Martin v. United States, 103 Fed. Cl. 445, 448 (2012) (quoting Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002)). Manifest injustice "'refers to injustice that is apparent to the point of almost being indisputable.'" Id. (quoting Pac. Gas & Elec. Co. v. United States, 74 Fed. Cl. 779, 785 (2006), rev'd in part on other grounds, 536 F.3d 1282 (Fed. Cir. 2008)).

Rule 59 imposes exacting standards designed to prevent parties from attempting "extensive re-trial based on evidence which was manifestly available at the time of the hearing." Seldovia Native Ass'n v. United States, 36 Fed. Cl. 593, 594 (1996) (internal quotations omitted).

**Rule 60**

Rule 60 governs relief from a judgment or order, and Rule 60(b) states:

***(b) Grounds for Relief from a Final Judgment, Order or Proceeding.***

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

**(1)** mistake, inadvertence, surprise, or excusable neglect;
**(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b);
**(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
**(4)** the judgment is void;
**(5)** the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
**(6)** any other reason that justifies relief.

RCFC 60(b).

Rule 60(b) is intended "'to grant a party relief from a judgment [or order] in circumstances in which the need for truth outweighs the value of finality in litigation.'"

3

Webster v. United States, 93 Fed. Cl. 676, 678-79 (2010) (quoting 12 JAMES WM. MOORE et al., MOORE'S FEDERAL PRACTICE § 60.02[2] (3d ed. 2004)) (alteration in original); see also Madison Servs., Inc. v. United States, 94 Fed. Cl. 501, 506 (2010) ("[I]t should be noted that relief from judgment pursuant to Rule 60(b) is an extraordinary remedy only to be granted in exceptional circumstances."). "In order to grant relief under these provisions, the court must find that a 'grave miscarriage of justice' would result if relief is denied." Kennedy v. Sec'y of Health & Human Servs., 99 Fed. Cl. 535, 540 (2011) (quoting United States v. Beggerly, 524 U.S. 38, 47 (1998)). Relief under Rule 60(b) is discretionary, "and the court may weigh equitable considerations in the exercise of its discretion. Nonetheless, relief from judgment under Rule 60(b) will not be given if substantial rights of the party have not been harmed by the judgment." Dynacs Eng'g Co. v. United States, 48 Fed. Cl. 240, 241-42 (2000) (internal citation omitted).

**The Court's Application of Rule 12(b)(6)**

Plaintiff contends that the Court erred in "refus[ing] to accept" its allegations that it has a property interest in sufficient access to its facility and that the Government's closure of the MRGO has denied it that access. Pl.'s Mot. for New Trial 7-8. The existence of a cognizable property interest is an issue of law. Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999) (finding that "[i]n almost all cases, the existence of a federally protectable property right is an issue of law for the court."); see also Munno v. Town of Orangetown, 391 F. Supp. 2d 263, 269-70 (S.D.N.Y. 2005) (noting that the issue of whether suspension without pay is a cognizable Fourteenth Amendment property interest is an issue of law); Dixon v. Mayor of Wilmington, 514 F. Supp. 250, 253 (D. Del. 1981) ("The issue of law in this case involves the murky area of alleged property interests. . . ."). As such, the Court was not obligated to accept Plaintiff's allegations of a right to sufficient access to its facility in determining whether to dismiss this action under Rule 12(b)(6).

A federal court evaluating a motion to dismiss must accept all <u>factual</u> allegations as true but is not obliged "to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); see also Bell Atl. Corp. v. Twombley, 550 U.S. 544, 555 (2007). "Such bare assertions, which do no more than state legal conclusions, are not entitled to be assumed true," but rather "are disentitle[d] ... to the presumption of truth even if cast in the form of a factual allegation." Dobyns v. United States, 91 Fed. Cl. 412, 423 (2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)) (internal quotations omitted); see also Extreme Coatings, Inc. v. United States, 109 Fed. Cl. 450, 454 (2013) ("Under *Twombly* and *Iqbal*, the court must not mistake legal conclusions presented in a complaint for factual allegations which are entitled to favorable inferences."); Red Hawk Constr., Inc. v. United States, 108 Fed. Cl. 779, 787 (2013) (noting that this Court may disregard unsupported conclusions of law when deciding Rule 12(b) motions).

Lone Star had ample opportunity to identify a cognizable property interest that would support its Fifth Amendment takings claim. On November 28, 2011, the Government filed a motion to dismiss Plaintiff's complaint for failure to demonstrate a legally protected property interest that would support a takings claim. The Court denied this motion on June 19, 2012,

4

and granted Plaintiff leave to file an amended complaint.  The Court ordered:

> In its amended complaint, Plaintiff shall:
>
>> a)  Articulate the compensable property interest that it is asserting in its takings claim;
>>
>> b)  Clarify the legal parameters of its takings claim;
>>
>> c)  Clarify whether in addition to its Fifth Amendment claim, it is asserting a separate and distinct claim alleging a violation of the Water Resources Development Act of 2007, including whether that Act is money-mandating;
>>
>> d)  Identify what governmental actions enticed Plaintiff to invest in improvements of almost $64.5 million;
>>
>> e)  Identify what governmental actions led Plaintiff to conclude that the MRGO would remain a deep-draft navigation outlet; and
>>
>> f)  Clarify its allegations and any claim regarding the IHNC Lock.

Lone Star Indus., Inc. v. United States, No. 11-543C, 2012 WL 2331410, at *3-4 (Fed. Cl. June 19, 2012).  The Court further instructed that "[t]hese questions about Plaintiff's claim should be taken as illustrative, not exhaustive -- Plaintiff should clarify and amend its complaint as it deems appropriate."  Id. at *4 n.4.

In its amended complaint Plaintiff alleged a property interest in the real estate and improvements at its facility and "an accessory right of deep-draft vessel access to the property under state and federal laws."  Am. Compl. ¶ 30.  Plaintiff cited Louisiana laws on predial servitudes and federal Public Law 455 in support of this right.  However, Plaintiff failed to articulate how these state and federal laws created a Fifth Amendment property right to deep-draft access at its facility.  As this Court determined:

> Here, Lone Star alleges that the Government's closure of the MRGO "has taken away 'all economically beneficial use' of certain improvements at Lone Star's Michoud Canal facility and a 'non-categorical' taking of other asset groups."  Pl.'s Opp'n 26; see also Am. Compl. ¶ 29.  Importantly, however, Lone Star has not plausibly alleged that the ability to use its property as a deep-draft vessel terminal is a right that inheres in its title to that property.  Thus, Plaintiff has not alleged facts indicating that its ownership of this facility located on the Michoud Canal just north of the Canal's intersection with the MRGO carried with it the perpetual right to deep-draft access via the MRGO to its facility.

5

Lone Star, 109 Fed. Cl. at 759.

Plaintiff also alleged a "compensable property interest in . . . real estate and improvements including docks, mills, ship unloaders, pipes, buildings, silos, and other equipment." Am. Compl. ¶ 29. Lone Star contended that the Government's closure of the MRGO "has taken away 'all economically beneficial use' of certain improvements at Lone Star's Michoud Canal facility and a 'non-categorical' taking of other asset groups." Pl.'s Opp'n 26. Plaintiff did not clarify what it meant by "asset groups," or how those "asset groups" related to the rest of its property at the facility. Lone Star did not allege that the deep-draft asset groups on its land comprise the entirety of its property interest, or that the ability to use its property as a deep-draft facility was within the "bundle of sticks" that it acquired with the title to that property.

Plaintiff now suggests that the Court erred in "refus[ing] to accept" that "[t]he improvements [to its facility] are useless because no ships can call and because the assets are too big, heavy and bulky to be moved." Pl.'s Mot. for New Trial 9; see also Am. Compl. ¶¶ 32-34. The Court did accept Plaintiff's factual allegation that its deep-draft improvements have been rendered useless, but found that Plaintiff failed to allege a compensable property interest in the ability to use its property as a deep-draft vessel terminal. Lone Star, 109 Fed. Cl. at 754-56. In American Pelagic Fishing Co. v. United States, 379 F.3d 1363 (Fed. Cir. 2004), the Federal Circuit found no cognizable property interest in the plaintiff's ability to use the *Atlantic Star* deep-sea fishing vessel to fish in the Exclusive Economic Zone ("EEZ") of the Atlantic Ocean. Although the court acknowledged that the Government's denial of permits to fish in the EEZ rendered the *Atlantic Star* useless, it declined to find a taking because the plaintiff's property rights were circumscribed by the United States' declaration of sovereignty over the EEZ fishing industry. Id. at 1378-81. Similarly, in Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206 (Fed. Cir. 2005), the Federal Circuit recognized that the regulation of the airspace over the plaintiff's Washington, D.C. heliport business rendered that business useless, but found that the plaintiff failed to demonstrate that it had a cognizable property interest in the public airspace above its property. Id. at 1219-20.

In the absence of allegations that support a right of deep-draft access to its facility or that demonstrate how Plaintiff's facilities or operations have been directly regulated, this Court found Plaintiff's situation analogous to that of the *Atlantic Star* owner in American Pelagic and the heliport operator in Air Pegasus. When the Government closed the MRGO, a public waterway, Lone Star suffered an indirect loss of its ability to maintain a deep-draft facility which can only be considered an economic consequence of the closing and not an invasion of a property right. See Air Pegasus of D.C., Inc., 424 F.3d at 1215 ("Air Pegasus's takings claim [for the inability to use its heliport to receive helicopters] was really for compensation resulting from a derivative injury. . . . This circumstance does not form the basis for a viable takings claim.") (internal quotations omitted). Indeed, "[t]he failure to establish a right to a particular use renders a takings claim based on that right 'fatally defective.'" Lone Star, 109 Fed. Cl. at 758-59 (quoting Am. Pelagic Fishing Co., 379 F.3d at 1383). As such, reconsideration on the basis that the Court failed to accept Plaintiff's

6

allegations is not warranted.

## The Navigational Servitude

Plaintiff further submits that "the Court relied upon a navigational servitude defense" in reaching its decision, and that the Court "misapplied the navigational servitude." Pl.'s Mot. for New Trial 1, 3. The Court stated that even if Plaintiff had been able to establish a property interest to support its takings claim, any such interest would have been subsumed by the navigational servitude. Lone Star, 109 Fed. Cl. at 757-58. The Court reasoned:

> [b]ecause the [Water Resources Development Act] specifies Congress' navigational purpose in the development and alteration of waterways around the country, the de-authorization of the MRGO [pursuant to the Water Resources Development Act] occurred in the Government's exercise of the navigational servitude. . . . The Government's navigational servitude as expressed in the WRDA prevents Lone Star from stating a plausible claim that the closure of the MRGO effected a taking of its property interest in deep-draft access.

Id. As noted by the Government, Plaintiff cited "no controlling case with a holding contrary to this Court's interpretation of the federal navigational servitude, and no intervening change in law that would warrant new analysis." Def.'s Resp. to Pl.'s Mot. for New Trial 9. As such, Plaintiff has not articulated any ground for reconsidering this aspect of the decision. In any event, the Court's application of the navigational servitude defense was an alternative ground for dismissal because, as the Court held, there could be no Fifth Amendment taking given that Plaintiff failed to allege facts giving rise to a compensable property interest in deep-draft access to its property under Louisiana or Federal Law, and "failed to allege that its facilities or operations were directly regulated by the Government's closure of the MRGO." Lone Star, 109 Fed. Cl. at 759.

## Louisiana Law on Predial Servitudes

Plaintiff asserts that the Court has "misapplied the Louisiana law pertaining to predial servitudes" by considering whether Plaintiff's estate is enclosed within the meaning of Louisiana law before determining whether a servitude of passage exists. Pl.'s Mot. for New Trial 10. Plaintiff contends that the existence of a servitude of passage depends on the sufficiency of access as determined by the needs of the estate and that the Court did not properly consider the sufficiency of Lone Star's deep-water access. Id. Plaintiff states that it has alleged sufficient facts to show that the available access is insufficient for a deepwater port, and that such allegations preclude a Rule 12(b)(6) dismissal. Id. at 11. The Court accepted Plaintiff's contention that it has insufficient deep-draft access to its facility. However, the Court found that Plaintiff failed to allege a plausible claim that Louisiana law provided a property right to deep-draft access.

Lone Star alleged that "Louisiana Civil Code Article 689 provides a right of passage – a 'predial servitude' in Louisiana parlance – to the owners of enclosed estates." Pl.'s Opp'n 16. Lone Star's position was that "instead of losing a preferred access point . . . Lone Star has no access point by which deep-draft ships can reach its ship-sized assets . . . ." Id. at 17. That is, by cutting off deep-draft access to its facility, the Government's closure of the MRGO has rendered the property an "enclosed estate" with respect to deep-draft shipping activities. See id. at 16-17. Under Louisiana law, an enclosed estate "that has no access to a public road or utility may claim a right of passage over neighboring property to the nearest public road or utility." LA. CIV. CODE ANN. art. 689 (2012). "The right of passage for the benefit of an enclosed estate shall be suitable for the kind of traffic or utility that is reasonably necessary for the use of that estate." LA. CIV. CODE ANN. art. 690 (2012). While Plaintiff submitted that the Court should consider the needs of its estate in determining enclosure, the clear import of these statutes is that a property that has access to a public road is not enclosed. LA. CIV. CODE ANN. art. 689 (2012); LA. CIV. CODE ANN. art. 690 (2012); see also LeBlanc v. Thibodeaux, 615 So. 2d 295, 298 (La. 1993) ("Civil Code Article 689 details the legal right of passage. It allows an owner of an estate that has no access to a public road to claim a right of passage over neighboring property to the nearest public road provided that the owner pays indemnity for the damage he causes.") (emphasis added); Vermilion Parish Sch. Bd. v. Broussard, 270 So. 2d 523, 524-25 (La. 1972) (referring to an enclosed estate as a "landlocked" estate).

Here, "Plaintiff still maintains access to its property by public road, railroad, and several other public waterways including the Mississippi River and Industrial Canal, Lake Pontchartrain, and the Intracoastal Canal. . . . The only type of access that has been eliminated is the deep-water access necessary to receive deep-draft shipping vessels." Lone Star, 109 Fed. Cl. at 755. Plaintiff acknowledged that it has access to several public thoroughfares, and the Court determined that these code provisions do not provide a right to deep-draft access to the Plaintiff's facility. Id.

### Conclusion

Plaintiff's motion for new trial, or alternatively to alter or amend the judgment is **DENIED**.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**

8