**Daniel DZIEWIOR, Plaintiff,**

**v.**

**CITY OF MARENGO, The Marengo Fire & Police Commission, Gaye Anderson, Doria Kelley, and John Keenum, in their personal and official capacities, Defendants.**

No. 87 C 20318.

United States District Court, N.D. Illinois, W.D.

June 21, 1989.

Michael K. Havrilesko, Rockford, Ill., for plaintiff.

James R. Schirott, Charles E. Hervas, James G. Sotos and Michael W. Condon, Schirott & Associates, P.C., Itasca, Ill., and Robert W. Smith and Marmarie J. Kostelny, Zimmerman & Smith, Elgin, Ill., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

This action comes before the court on the parties' cross motions for summary judgment. For the reasons set forth below, the court grants summary judgment in favor of the defendants.

## BACKGROUND

The plaintiff Daniel Dziewior ("Dziewior") was an applicant for a position as a police officer with the City of Marengo. Dziewior participated in the application process and, after successfully completing a physical agility test and written and oral examinations, was placed on an "initial" or "currant" [sic] "eligible" or "eligibility" list of Marengo police officer candidates. Subsequently, Dziewior was notified by the Marengo Fire and Police Commission ("Commission") that vacancies existed on the police force and that Dziewior, if still interested, would be scheduled for a psychological test, a polygraph test, and a final physical examination. (Defendants' 12(e) Statement, ¶ 9). The plaintiff subse-

quently sat for the polygraph and psychological tests. (Defendants' 12(e), ¶ 10).

After receiving the test results, the commission made up of Gaye Anderson, Doria Kelley and John Keenum, informed the plaintiff that as a result of his test scores he would no longer be able to take part in the selection process. (Defendants' 12(e), ¶ 12). The plaintiff demanded a hearing on the subject of his removal from consideration and he received one. (Defendants' 12(e), ¶ 14).

Dissatisfied with his hearing and his removal from the selection process, the plaintiff brings a procedural due process claim, pursuant to 42 U.S.C. § 1983, against the defendants the City of Marengo, the Commission, and Gaye Anderson, Doria Kelley, and John Keenum in their personal capacities. The plaintiff charges the defendants with depriving him of both liberty and property without due process of law in violation of the Fourteenth Amendment. The plaintiff prays for injunctive relief ordering the defendants to hire Dziewior; and award compensatory damages in an amount including back pay, benefits, and credit for seniority from the date of eligibility to the date of hire; and damages for emotional distress; and punitive damages; fees and costs. The parties have presently filed cross motions for summary judgment, each moving the court to find the instant controversy ripe for judgment and that they are entitled to judgment as a matter of law.

## DISCUSSION

The court will not grant any summary judgment motion unless all the pleadings and supporting documents, if any, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir.1976).

The initial burden is on the moving party to demonstrate that there is no genuine issue or question of material fact in dispute. *Rose v. Bridgeport Brass Co.*, 487 F.2d 804, 808 (7th Cir.1973). Once the moving party has stated that a fact is not in question, the burden shifts to the non-moving party to demonstrate that there is some question of fact or to contradict a fact and bring it into question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

*Property Interest*

By now it is a well-settled proposition that one is only entitled to due process, that is notice and an opportunity to be heard, when one is deprived of a protectable "property" or "liberty" interest. A protectable property interest is defined and arises as follows:

> [t]he Fourteenth Amendments' procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits ... [T]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

> \*    \*    \*    \*    \*    \*

> Property interests ... are created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law—rules and understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth*, 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972). *See also Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed. 2d 684 (1976); *Anderson v. City of Philadelphia*, 845 F.2d 1216, 1220–22 (3rd Cir. 1988).

The plaintiff charges that the defendants have deprived him of a property interest, but Dziewior is not entirely clear on exactly what that property interest entails. In his complaint, the plaintiff complains of a deprivation of his property interest in future employment as provided by the Rules and Regulations of the Commission. Later, in the plaintiff's memorandum opposing defendants' motion for summary judgment,

the plaintiff's allegedly deprived interest is described as "a right to or interest in fair consideration for public employment,[1] including consideration for placement on an eligibility list." While there appears to be some drift in the plaintiff's definition of the relevant property interest, the pleadings in total seem to indicate that the ultimate interest the plaintiff is determined to protect is his interest in appointment to the Marengo Police Department. Whether the defendant expresses this interest as placement on an eligibility list the *sine qua non* of appointment, or a right to future employment does not matter since both phrases serve as euphemisms for the plaintiff's allegedly legitimate entitlement to appointment to the Marengo police force.

Thus, the initial question to be addressed and answered by this court is whether Mr. Dziewior has a mere subjective or unilateral expectation of appointment to the Marengo police force, in which case he has no property interest, or a legitimate entitlement to appointment, in which case he does have a property interest. *See Harris v. City of Wilmington*, 644 F.Supp. 1483, 1487 (D.Del.1986). Of course, this inquiry is an objective one and is to be determined by examining the relevant rules, regulations and understandings surrounding the defendants' hiring practice that could give rise to a mutual understanding supporting an entitlement to appointment. Particularly, the court needs to investigate the Commission's Rules and Regulations ("Rules"), its Orientation booklet and meeting and other manifestations of its hiring process. *See Id.* at 1488.

The plaintiff's argument supporting the existence of a property interest in appointment to the police force is rather brief and non-specific. The plaintiff merely mentions in his briefs that his property interest arises out of the Rules and Regulations which outline the Commission's hiring procedure which culminates in a listing of applicants on an eligible roster. The plaintiff points out that Article II, Section Four of the Commission's Rules and Regulations

provides a disqualified applicant the opportunity to be heard. (Defendants' 12(e), ¶ 13). This provision, according to the plaintiff, explicitly sets forth a legitimate claim of entitlement to fair consideration for future employment. Finally, Dziewior notes that his property interest is also implied from the defendants' consent to a hearing.

■ While these are rather general arguments, the court apprehends two possible arguments in favor of the existence of the plaintiff's alleged property interest. The two arguments can be summed up as follows: First, the plaintiff could argue that the Rules and Regulations assure that once an applicant is placed on an eligibility list and a vacancy occurs, that applicant has a legitimate entitlement to appointment. Second, thanks to the hearing and notice provisions in the Rules and Regulations provided for disqualified applicants, the plaintiff has a protectable property interest in remaining an applicant, the *sine qua non* of appointment to the police force.

The former argument is supported by the following provisions from the Commission's Rules and Regulations. Article III–A, Section 5 of the Rules and Regulations, provides, *inter alia*, that examinations administered to applicants are to be given in the following sequence:

| Examinations | % of Total Grade | Minimum Passing Grade |
| --- | --- | --- |
| Background Investigation | —— | Pass or Fail |
| Physical Agility | —— | Pass or Fail |
| Written Test | ⅔ | 70% |
| Oral Interview | ⅓ | 70% |
| Medical Examination | —— | Pass or Fail |

The background investigation may include the polygraph test and/or temperamental/psychological examination.

(Defendants' 12(e), Ex. A).

Furthermore, there is a provision for the preparing, posting and keeping of an "eligible roster" of candidates passing *all* examinations. It is from this list according to the Rules that all vacancies shall be filled.

---

1. This definition was apparently patterned after language in *Norlander v. Schleck*, 345 F.Supp. 595, 599–600 (D.Minn.1972).

The commissioners will prepare, post and keep an eligible roster of the candidates successfully passing all examinations. Candidates shall take rank upon the eligible roster in the order of their relative excellence as determined by examination without reference to priority of time of examination. To qualify for placement on the eligible roster, a candidate must pass all "pass/fail" phases of the examination and attain a minimum score of 70% on both the written and oral examinations.

The eligible roster will remain in force for two years from the date of posting. The board shall strike off the names of candidates for original appointment after such names have been on the list for more than two (2) years.

All vacancies for the police department shall be filled with the candidate heading the list except as otherwise provided in this section.

(Defendants' 12(e) Statement, Ex. B). Based on these Rules and Regulations, the plaintiff could argue that the defendants' hiring procedures create more than a unilateral expectation of appointment to the police force. Ostensibly, the plaintiff could argue that he has passed all of the examinations *required* by the Commission's Rules and Regulations (the psychological and polygraph tests are merely optional) and then was placed on the "eligible roster." At this point, the plaintiff could conclude that, according to the Rules, when a vacancy occurs as it did, he would have legitimate entitlement to be appointed to fill that vacancy. *See Stana v. School Dist. of City of Philadelphia*, 775 F.2d 122, 125–26 (3rd Cir.1985) (property interest in remaining on eligibility list where local policy created mutual understanding that once on eligibility list, applicant will remain on list for specific period of time); *but see Anderson*, 845 F.2d at 1220–22 (found no property interest in employment with police force when placed on eligibility

list where department exercises broad discretion in hiring); *Houk v. Village of Oak Lawn*, 647 F.Supp. 710 (N.D.Ill.1986).

■ Before explaining why the court rejects this argument, the court should explain why the argument is at first so appealing. Because the defendants have failed to follow some of their own procedures as set out in the Commission's Rules and Regulations,[2] there is an appearance that an applicant, taking some of these Rules and Regulations at face value, could conceivably believe that after passing some of his tests and being placed on an eligible list he had legitimate entitlement to appointment. For example, the defendants readily admit that their hiring procedure as practiced did not mirror all procedures as set out in the Rules and Regulations. Indeed, the individual defendants' depositions reveal that an Article III–B, Section 4 eligible list was never posted nor a polygraph or psychological test given before the other three exams. (Defendants' 12(e), ¶¶ 6, 7, 8). In particular, the defendants only require applicants to pass the physical agility test, the written examination, and the oral examination before being placed on a so-called initial or preliminary eligibility list. (Defendants' 12(e), ¶ 7). The applicants remained on said list until a vacancy with the police department opened up. Then, the applicant is further tested with psychological and polygraph tests and a final medical examination. If the applicant satisfactorily completes these tests, he or she is then appointed. (Defendants' 12(e), ¶ 8). The defendants readily admit that they have never prepared an eligibility list as described in Article III–B, Section 4 of the Rules and Regulations. (Plaintiff's memo in support, Ex. C). The defendants explain that their method of selection is better suited for a police department with a budget the size of Marengo's. (Defendants' 12(e), ¶ 6).

Thus, if an applicant was only aware of the sections of the Rules and Regulations

---

**2.** To be sure, the defendants may have failed to adhere to all of their own regulations, in particular, the posting of a Section 4 eligibility list. This eventuality, however, does not evoke constitutional issues. Breaches of local rules and

regulations should be handled on a local level. *See Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir.1988); *see also Bishop v. Wood*, 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976); (Defendants' 12(e), ¶ 6).

cited above but proceeded through the hiring process as currently practiced, it is conceivable that an applicant could believe that after just taking three of the exams, namely, the physical agility, the written and oral examinations, and passing them and being placed on a list, that this list was the permanent eligibility list from which they would have a legitimate entitlement to appointment when a vacancy occurred. The Rules and Regulations cited beforehand, however, are not inclusive and applicants to the Marengo Police Department were indeed aware that to be appointed, they may have to pass polygraph and psychological tests.

First, the Commissions's Rules and Regulations themselves provide as follows:

> Applicants for original appointment may be required to submit to a polygraph examination. An applicant may be disqualified or removed from a *preliminary* eligibility list in the event that the polygraph examination reveals any material misrepresentation or untruthful statement made by the applicant at any time during the entire application process. Applicants may also be required to complete and pass supplemental personal background questionaires, including temperamental/psychological examinations as the Commission may from time to time request. Any such supplemental test shall be applied to all applicants within that particular examination period.

(Defendant's 12(e), Ex. B) (emphasis added).

Obviously, the Rules not only contemplate the possibility of a preliminary or initial eligibility list, but that a polygraph test could be the reason to remove an applicant from such a preliminary list. Also interestingly, the language quoted above contemplates that a polygraph could reveal misstatements made *at any time* during the entire "application process." A polygraph test only given during a background investigation, as an applicant's first exam, surely could not provide this service. In addition, the section provides that supplemental personal background questionaires,

including "temperamental/psychological" examinations, may be requested at essentially the Commission's pleasure. Again, the Rules, themselves, provide for polygraph and psychological tests outside the initial background exam. In short, an applicant, after reviewing all the Commission's Rules and Regulations, would understand that the Rules provide for the possibility of psychological and polygraph tests throughout the "examination process" as a requirement for appointment.

Moreover, in the Marengo Fire and Police Commission's pre-testing Orientation booklet handed out to applicants at an initial orientation meeting, the Commission outlines to applicants the sequence regarding the physical agility, written and oral exams and then states as follows:

> Following the sucessful [sic] completion of all phases of the selection process through the written examinations and the oral interview, all applicants will be fingerprinted and may be required to submit further back-ground information as well as polygraph and/or temperament/psychological examinations.

(Defendant's 12(e), Ex. C; *see* Daniel Dziewior's receipt of booklet at Exhibit B). Again, the defendants' documents reveal that the Department's applicants, and the plaintiff in particular, were told of their responsibility of having to take a polygraph and/or psychological exam in order to be appointed to the police department. The plaintiff confirms this knowledge in his deposition testimony.

> Q. Once your name was placed on that list, was it your understanding that you were guaranteed a job with Marengo?

> A. It was my understanding if they would have followed the rules and regulations of not only their fire and police commission but state statute, I was, in fact, on the eligibility list and anyone who was going to be employed by the city has to be taken from that list.

> Q. Okay. So it was your understanding that you were guaranteed employment by being placed on that list?

A. I was guaranteed the opportunity for employment, yes.

Q. Was it your understanding that you had to successfully complete your psychological and polygraph examinations?

A. Under a pass/fail, yes.

Q. So that I can be clear, when you were placed on the list, you knew that you had an opportunity to be employed by Marengo, but you also knew that you had to also successfully complete psychological and polygraph examinations?

A. Yes.

Q. So there's no dispute about that. That was clear to you at that time?

A. That was clear at the time. I'd like to clarify that last statement.

Q. Sure.

A. As far as psychological and the polygraph, going through the rules and regulations of the Marengo Fire and Police Commission, I knew that it was an option of theirs to impose that as far as the final requirement before actually being hired.

Q. Is that something that you discovered after all this happened or is this something that you knew at the time you were placed on the list?

A. At the time that I was placed on the list, I did not know what the next steps would be other than the fact that they could ask for a polygraph and psychological.

Q. Did you expect that they would ask for that?

A. I had heard that they had required it from the other officers that they had hired, yes.

Q. Did you—

A. I believed it to be an option of theirs at that particular time.

Q. Did they ever indicate to you in any way that they were going to require that of you?

A. I believe the first time that I was informed of the polygraph and psychological would be at the original orientation; that this would be a pass/fail phase of the processing—employment process. I don't remember if they specified a time as to when they were going to do this as far as these two tests.

(Defendants' 12(e), ¶ 15, Ex. L).

Based on the documents and the testimony of Mr. Dziewior, it is clear that Marengo Police Department applicants were made aware from the outset of the possibility that they would have to take and successfully pass psychological and polygraph tests in order to be appointed.

Accordingly, the plaintiff could not have had a legitimate entitlement to appointment without passing the psychological and polygraph tests understanding, as he did, that an applicant must pass all exams, including a polygraph and/or psychological exam in order to be appointed to the department. Until appointment or until the passing of those tests, the applicant could not be assured of an appointment. *See Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986) (found no property interest before passing exam). Mr. Dziewior, while on the eligibility list, had not passed these two tests and therefore was left only with the unilateral expectation of being appointed and not with a legitimate entitlement.

The next argument that can be gleaned from the plaintiff's briefs in support of the existence of a property interest is the provision in the Commission's Rules and Regulations for notice and a hearing upon disqualification from the eligibility list. In particular, when an applicant or eligible is removed from the eligible roster for one or more of several enumerated reasons, according to the Rules, the Commission must provide notice of the disqualification and a hearing as follows:

> Any applicant, or eligible, deemed disqualified hereunder, shall be notified by the Commission and upon written request made by the applicant, within five days after the receipt of such notice, shall be given the opportunity to be heard by the Commission.

(Defendants' 12(e), ¶ 13, Exhibit A).

The plaintiff suggests that the existence of this notice and hearing provision is an

implicit confession by the defendants that due process is required upon removal. The defendants counter that the mere presence of a procedure, such as a hearing and notice, does not automatically translate into a protectable property interest. The court shares the defendants' view and finds that the Rules and Regulations of the Commission, with regard to the provision for notice and hearing upon disqualification, do not create an implicit promise or mutual understanding that the applicants will remain on the list unless removed for cause; rather, the Rules merely promise that upon removal under certain conditions the Commission will provide notice and hearing. This process does not limit the Commission's discretion in removing eligibles or candidates from the eligibility list or provide applicants with any more security in their position on the list. *See Eftekhara v. Ill. Dept. of Children & Fam. Serv.*, 661 F.Supp. 522, 526–27 (7th Cir.1987). It only affords applicants removed from the list, for a specific reason, notice and an opportunity to be heard. Consequently, these provisions do not support a protectable property interest and provide applicants with no more than a unilateral expectation of remaining on the eligibility list. The "hearing and notice provision" is provided through the grace of the Commission and is not mandated by constitutional concerns. Accordingly, the court finds that there is no protectable property interest in the plaintiff remaining on the eligibility list or for appointment to the Marengo police department.

*Liberty Interests*

The plaintiff also charges the defendants with depriving him of liberty without due process of law. In particular, the plaintiff argues that his liberty interest in his reputation in the community and his ability to pursue an occupation in law enforcement was implicated by language in the minutes of the Commission's special meeting of January 27, 1987. Specifically, the statement reads as follows:

> The Commission reviewed and carefully considered the recent Polygraph and Psychological test results for the three remaining candidates on the Initial Eligibility List and found that none of these meets the standards of this community. (Defendants' 12(e), Ex. M).

■ To begin, it is generally acknowledged that a government employee's liberty interests are implicated when in terminating an employee, the government makes any charge against the employee that might seriously damage his or her standing or association in the community or impose on him or her a stigma or other disability that forecloses his or her freedom to take advantage of other employment opportunities. *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707; *Ratliff v. City of Milwaukee*, 795 F.2d 612, 625 (7th Cir.1986). This type of liberty interest has also been extended to applicants for governmental employment. *Perry v. FBI*, 759 F.2d 1271, 1276–1282 (7th Cir.1985).

To prevail on such a claim, the plaintiff must generally plead and prove that there was a tangible change in his status (i.e. dismissed from a job or eligibility for one). *Doe v. U.S. Dept. of Justice*, 753 F.2d 1092, 1105 (D.C.Cir.1985) *citing Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); that the charges against him are false; *see Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977); that the charges were stigmatic; *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *see also Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 547 n. 13, 105 S.Ct. 1487, 1496 n. 13, 84 L.Ed.2d 494 (1985); that the charges were published or publicly disseminated; *see Yatvin v. Madison Metropolitan School District*, 840 F.2d 412, 417 (7th Cir.1988); *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707; and that the plaintiff was deprived of a name-clearing-hearing in the wake of these charges. *See Doe*, 753 F.2d at 1108; *Codd*, 429 U.S. at 627, 97 S.Ct. at 883.

In the instant case, the defendants raise various challenges to the sufficiency of various elements of the plaintiff's claim. First, the defendants argue that the statement "... not meeting the community standards" is far from a stigmatic charge against the plaintiff. Next, the defendants

point out that the charges were not truly published or publicly disseminated as the plaintiff's name was not mentioned in the publicly displayed minutes of the Commission's meeting. Finally, the defendants continue that even if a liberty interest is implicated by the statement, the defendants offered the plaintiff a name-clearing hearing and thus due process.

The court finds the defendants' latter argument meritorious and as such, finds the plaintiff's liberty interest claim lacking; but before commenting on this latter argument, the court would be remiss if it did not comment on the other two.

■ First, the court is reminded by this Circuit's discussion in *Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir.1987), and several other cases, of the roots of the constitutional right not to be fired or denied eligibility for a job or promotion on stigmatizing grounds. These decisions reinforce the bedrock notion that stigmatizing remarks must not merely be unflattering or defamatory but carry a serious stigma such as dishonesty, immorality, or thoroughly unprofessional conduct. *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707. The statements must do more than merely diminish the plaintiff's employability or cost him a particular type of job or level of salary. *Zaky v. U.S. Veteran's Administration*, 793 F.2d 832, 840 (7th Cir.1986), *cert. denied*, 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed. 2d 367 (1986). Rather, the remarks must make him effectively unemployable in his chosen work, or otherwise bar him from an entire class of opportunities. *Ratliff*, 795 F.2d at 626; *Doe*, 753 F.2d at 1104–05; *see also Stratten v. Wadsworth Veteran's Hospital*, 537 F.2d 361, 366 (9th Cir.1976). For example, mere charges of mismanagement or incompetence are far less than required to implicate an employee's liberty interest. *See Yatvin*, 840 F.2d at 417; cf. *Doe*, 753 F.2d at 1108; *Stana*, 775 F.2d at 125 n. 1. In the instant case, the defendants' statement fails to pinpoint any behavior or misbehavior on the part of the plaintiff that would preclude a whole range of employment. Indeed, taken in context, all a reader could gather from the state-

ment is that the plaintiff's test results, not the plaintiff himself, failed to meet community standards—the words "none of these" refers to the antecedent "Polygraph and Psychological test results" and not the "three remaining candidates." (*See* Defendants' 12(e), Ex. M).

Next, the court simply observes that the failure to mention the plaintiff's name in the published minutes casts substantial doubt on the merits of the plaintiff's liberty interest claim. *See Clark v. Mauer*, 824 F.2d 565, 566 (7th Cir.1987) (stigmatizing charges failed to identify plaintiffs). This, however, raises a factual issue. (*See* Plaintiff's 12(f) Statement, ¶ 16).

■ In any event, the court need not decide the preceeding two issues because even if one assumes that a liberty interest exists, this court would still find that the plaintiff was not, in fact, deprived of due process. In particular, the court finds that the plaintiff was afforded all the due process that was constitutionally mandated in his March 9, 1987 hearing with the Commission. Due process is a flexible concept and the nature and extent of notice and hearing depends upon the interest to be protected and the government function involved. *Zaky*, 793 F.2d at 842. In the instant case, the plaintiff was entitled to a name-clearing hearing which is exactly that: an opportunity to counter the stigmatizing remarks made by his potential employer. *Id.* at 842. It is of primary importance to remember that a name-clearing hearing is not a hearing to argue the merits of the defendants' decision not to hire the plaintiff, but to allow the plaintiff an opportunity to refute the stigmatizing charges in an atmosphere comparable to the circumstances surrounding the dissemination of the original stigmatizing charges. *Id.* at 842; *Baden v. Koch*, 799 F.2d 825, 831–33 (2nd Cir.1986); *Thomas v. Board of Examiners*, 651 F.Supp. 664, 668–69 (N.D. Ill.1986), *aff'd*, 866 F.2d 225 (7th Cir.1988). The court finds that in the instant case such a comparable opportunity was afforded to the plaintiff. The transcript of the March 9, 1987 hearing reveals that the defendant was indeed allowed to comment

on the charges that his test results did not meet community standards. On two separate occasions the lawyer for the commission commented as follows:

Mr. Smith: Again, I think the Board's position is that it followed its customary routine process and what we are affording here is an opportunity for Mr. Dziewior to address the Board, not to be interrogated by you or him or anybody.

\* \* \* \* \* \*

Mr. Smith: Well, its not the purpose of the affording an opportunity to be here. If he wishes to address the process or anything, he may, I guess. But if he has something that he wants to say, that's what we're here for, to listen to that.

(Defendants' 12(e), Ex. K at pp. 5–6). Clearly, the plaintiff was given a public forum to refute the charges in the minutes of the Commission's special meeting. Granted, the plaintiff was not apprised of his test scores, or any incorrect responses to particular questions, but this however, was not necessary for purposes of affording him due process. As the plaintiff points out in his pleadings, the stigma attaches from the statement that his test scores "did not meet community standards" and not from any specific score or types of questions missed or answers made during the tests. If the defendants' general statement was enough to stigmatize the plaintiff, then a general statement refuting the stimatizing charge is enough to "clear" his name of such a charge (i.e. "My test results do meet community standards"). *Thomas*, 651 F.Supp. at 668–69.

Accordingly, the court finds that the plaintiff's due process rights with regard to his liberty interest in pursuing an occupation and maintaining a reputation in the community were not violated.

## CONCLUSION

For the reasons set forth above, the court finds that the plaintiff was not unconstitutionally deprived of liberty or property and, therefore, grants summary judgment in favor of all the defendants.[3]

---

**3.** Judgment for the defendant obviates the need to address the defendants' good faith immunity argument or the Marengo Fire and Police Commission's argument that it is not a "suable" entity under Section 1983.