Wanda WRIGHT, Plaintiff,

v.

Reynaldo P. GLOVER, Robert M. Weissbourd, James A. Dyson William H. Finch, Michael N. Mayo, Terry E. Newman, Teresa Fraga, being The Board of Trustees of Community College District No. 508, County of Cook and State of Illinois, City Colleges of Chicago, and Nelvia M. Brady, Defendants.

No. 91 C 1363.

United States District Court, N.D. Illinois, E.D.

Oct. 28, 1991.

John M. Bowlus, Chicago, Ill., for plaintiff.

Christine Holtz, Sharon L. Tiller City Colleges of Chicago, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Wanda Wright brings this action under 42 U.S.C. § 1983, alleging that defendants deprived her, without due process, of property and liberty interests guaranteed her under the Fourteenth Amendment. Plaintiff was director of the Winning Experience Program of the City Colleges of Chicago (CCC). Defendants are members of the Board of Trustees of CCC, and the chancellor of CCC. Wright challenges the manner of her suspension and threatened termination from her position and the sufficiency of the procedural protections she received.[1] On April 11, 1991, this court entered the magistrate's report and recommendation, denying plaintiff's motion for a temporary restraining order and preliminary injunction to prevent defendants from terminating her pending a name-clearing hearing. Defendants now move this court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to

dismiss plaintiff's complaint. For the reasons set forth below, we grant defendant's motion to dismiss.

## STANDARD OF REVIEW

When considering a motion to dismiss, we must accept the plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984), and view them, along with any reasonable inferences drawn from them, in a light most favorable to the plaintiff. *Doe on behalf of Doe v. St. Joseph's Hosp.*, 788 F.2d 411, 414 (7th Cir.1986). A complaint should be dismissed for failure to state a claim only if it appears beyond doubt that plaintiff can prove no set of facts that would entitle her to relief. *Id.* at 414. However, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985).

In light of the above standards, the following recitation of the facts reflects plaintiff's version of the events in question.

## FACTS

On February 5, 1991, Dr. Nelvia Brady, the chancellor of CCC, delivered a letter to Wright. The letter questioned the propriety of certain purchasing and hiring decisions Wright had allegedly made during her employment with CCC. Dr. Brady was informed of the allegations by Nathaniel Thomas, plaintiff's immediate supervisor and a vice-chancellor of CCC. The letter also notified Wright of a meeting scheduled for February 6, 1991 to allow her to respond to the allegations by presenting documents or written statements. No wit-

---

1. Plaintiff was suspended, with pay, effective February 8, 1991. According to defendants in their reply in support of their motion to dismiss, after this motion to dismiss was filed plaintiff's status then changed to suspended, without pay, effective May 19, 1991 through June 29, 1991. Then, defendants state, "[o]n May 17, 1991 plaintiff's position as Director of the Winning Experience Program was eliminated, effective June 30, 1991, due to budgetary reductions. Plaintiff's dismissal was included in the Board Report as a termination due to reduction in force." On this motion to dismiss, for purposes of determining a constitutional deprivation, the analysis is unaffected by whether the suspension ultimately led to plaintiff's termination.

nesses were allowed to testify. Wright attended the February 6 meeting, presented her side of the story and made a tape-recording of the meeting. An attorney for CCC and Vice Chancellor Laurence Stanton of CCC were present at the meeting. No evidence (other than the allegations themselves) was presented against Wright, and no decision was reached regarding the truth or falsity of the allegations in the February 5 letter. The next day, February 7, the Board of Trustees of CCC suspended plaintiff, with pay, effective February 8, 1991.

On February 8, 1991, Nathaniel Thomas, together with a computer support person, entered Wright's office and disconnected her computer, demanded her keys to the office, directed plaintiff to leave the office, and told the other staff members present that he was locking the office and that they were all to go home. In the course of this scene (February 8 scene), Thomas allegedly called plaintiff a "bitch," within the hearing of several of her colleagues. Plaintiff asserts that the reasons given for her suspension were false and were fabricated by Thomas because she had spurned his sexual advances.

On February 11, 1991, plaintiff received a letter informing her of her suspension. On March 6, 1991, plaintiff brought suit, alleging that defendants intended to terminate her in violation of her property and liberty interests. She also sought a temporary restraining order and preliminary injunction against defendants. These matters were referred to the magistrate. On March 11, 1991, the magistrate ordered defendants to hold a hearing to allow plaintiff to respond to the allegations. The hearing was held on March 12, 1991. Both Chancellor Stanton and plaintiff attended the meeting, with counsel. The hearing was transcribed by a court reporter. The March 12, 1991 hearing consisted of plaintiff denying the allegations in narrative form. Again, no evidence was presented by CCC against Wright and no decision was reached by Chancellor Stanton as to

the truth of the allegations in the February 5 letter.

## DISCUSSION

The due process clause forbids the state from depriving an individual of life, liberty or property without providing constitutionally adequate notice and an opportunity to be heard.[2] *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). However, the Supreme Court has also held that procedural due process requirements do not apply to every deprivation by the state, but "only to deprivations of interests included within the fourteenth amendment's protection of property and liberty." *Munson v. Friske,* 754 F.2d 683, 692 (7th Cir. 1985).

### I. *Nature of the Claims*

#### A. The Arguments

According to Wright, the February 5 letter and the February 8 scene have stigmatized, humiliated and degraded her in the eyes of her peers, and have damaged irreparably her future employment possibilities (cplt. 15). Wright maintains that these circumstances implicate property and liberty interests for which process is due. Wright alleges that the process she has received is constitutionally inadequate.

Defendants claim that plaintiff's complaint should be dismissed because she has no property right in her continued employment, because the facts alleged do not support a claim for violation of her liberty interests, and, in any event, because she has received all the process that she is due as a result of the February 6 and February 12 hearings.

#### B. Procedural Due Process Analysis

Plaintiff's due process claim, under the Fourteenth Amendment, is a procedural rather than substantive one. In analyzing such a claim, we first determine whether

---

**2.** Defendants do not dispute, and this court assumes, that they were acting under color of state law in suspending plaintiff.

the interests of which plaintiff was allegedly deprived are within the Fourteenth Amendment's protections. If so, then we ask whether the state's conduct amounted to a constitutional "deprivation" of those interests. If the state deprived plaintiff of protected interests, then she had a constitutional right to fair procedure accompanying that deprivation. The last inquiry, then, is determining what process was due the plaintiff in her particular situation. *D'Acquisto v. Washington*, 640 F.Supp. 594, 606–7 (N.D.Ill.1986).

## II. *Deprivation of Protected Interests*

### A. Property Interest

■■■ A property interest of a government employee in her job is not created by the Constitution, but by independent sources such as state law. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *see also New Burnham Prairie Homes, Inc. v. Burnham*, 910 F.2d 1474, 1479 (7th Cir. 1990). One needs more than an "abstract need or desire" in order to have a property interest in continued employment. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Plaintiff has alleged no facts indicating that she has a property right in her position with CCC.[3] The bare assertion of a property interest in her continued employment is insufficient. *Simpkins v. Sandwich Community Hosp.*, 854 F.2d 215, 218 (7th Cir.1988) ("It is well-settled that a unilateral expectation of continued employment does not create an entitlement that the due process clause protects."). Thus, plaintiff has not been deprived of a property interest, either with or without due process.

### B. Liberty Interest

Analyzing liberty interest deprivations requires a two-pronged inquiry. *Roth*, 408 U.S. at 573–4, 92 S.Ct. at 2707; *Larry v. Lawler*, 605 F.2d 954, 957 (7th Cir.1978). "[A]lleged violations of asserted infringe-

ments of a liberty interest of a discharged [or suspended] employee *must* be analyzed to determine whether statements concerning the employee, made during the discharge, either impugned the employee's moral character or diminished his future employment opportunities so significantly that his liberty interest in future employment was implicated." *Zaky v. United States Veterans Admin.*, 793 F.2d 832, 840 (7th Cir.1986), *cert. denied*, 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986) (emphasis in original). Generally, to impugn one's moral character sufficiently requires "such charges as immorality, dishonesty, alcoholism, disloyalty, Communism or subversive acts." *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir.1985); *accord Hannon v. Turnage*, 892 F.2d 653, 660 (7th Cir.1990). However, stigma to one's reputation "apart from some more tangible interests such as employment," does not constitute a deprivation of a liberty interest. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976); *see also Goulding v. Feinglass*, 811 F.2d 1099, 1102 (7th Cir. 1987), *cert. denied*, 482 U.S. 929, 107 S.Ct. 3215, 96 L.Ed.2d 701 (1987).

■■■ Because the tangible interest needed to establish a liberty deprivation is often the employee's interest in future employment, the government cannot foreclose an individual's employment opportunities without due process. *Roth*, 408 U.S. at 574, 92 S.Ct. at 2707; *D'Acquisto*, 640 F.Supp. at 608. Wright argues that the charges and circumstances surrounding her suspension were so defamatory that her employment prospects have been irreparably injured, or, in other words, foreclosed by defendants' actions.

■■■ One's liberty interest in employment is defined narrowly and does not include the "right to be hired for or to keep a particular government job." *D'Acquisto*, 640 F.Supp. at 608. However, if defendants' actions were sufficiently defamatory

---

**3.** In the hearing before Magistrate Judge Bucklo, plaintiff agreed that her employment was at will. Further, under Illinois law, plaintiff is presumed to have been an at-will employee. *Simpkins v. Sandwich Community Hosp.*, 854

F.2d 215, 218 (7th Cir.1988). Moreover, her complaint alleges that it was the circumstances surrounding her suspension that implicate her protected interests, not the nature of her employment status itself.

to impose a stigma on Wright such that she is "virtually unemployable in [her] chosen profession, the effect can be an impairment of [her] liberty interest" which requires fair procedure. *Id.* at 608–9.

■ The allegation of being stigmatized and humiliated in front of one's peers is solely a claim of stigma to reputation and, without more, is insufficient to implicate a liberty interest. *Goulding,* 811 F.2d at 1102. Thus, defamation by the state, standing alone, is not the kind of state action which triggers due process protections. *D'Acquisto,* 640 F.Supp. at 607. We read plaintiff's complaint as claiming a liberty interest in her reputation and in her future employment opportunities. Since injury to reputation alone is insufficient to implicate a liberty interest, we analyze plaintiff's claims in light of the extent that defendants' actions have made her "virtually unemployable" in her chosen field.

The allegation that defendants' actions have stigmatized plaintiff, causing irreparable injury to her future employment opportunities, does implicate a constitutionally protected liberty interest. If defendants' actions have amounted to a deprivation of this interest, she is entitled to due process.

### C. Deprivation of a Liberty Interest

In order to state a claim for liberty deprivation, plaintiff's pleadings must satisfy several elements:

First, obviously, if the injury rests on defamation, the state action must be defamatory. At a minimum, then, the charges must be false, *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977), and must have been communicated to someone, *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). Secondly, if the alleged injury is to the individual's liberty interest in pursuit of his occupation, then the defamation must come in

the context of an unfavorable employment decision, *Colaizzi v. Walker,* 542 F.2d 969 (7th Cir.1976), *cert. denied,* 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977); must carry the kind of stigma which could substantially curtail the individual's employment possibilities, *Munson v. Friske,* 754 F.2d 683 (7th Cir. 1985); and must have been communicated, or have the potential to be communicated, to possible employers. *Perry [v. F.B.I.]* 759 F.2d [1271] 1279 [ (7th Cir.);] *Larry,* 605 F.2d at 958.

*D'Acquisto,* 640 F.Supp. at 610.

■ Plaintiff does allege that the charges in the February 5 letter are false, thus satisfying that element. Also, the charges came in the context of the unfavorable employment decision of her suspension with pay.[4] Plaintiff also argues that the stigma associated with the allegations in the February 5 letter, together with the humiliating, public experience at the February 8 scene have irreparably damaged her employment prospects, and satisfy the remaining elements. Defendants, on the other hand, argue that they have not deprived Wright of a liberty interest because the allegations in the February 5 letter were not sufficiently stigmatizing, and because the charges were not published. Further, defendants contend that the February 8 scene does not amount to, nor provide the basis for, a deprivation of Wright's liberty interest. Defendants argue that they have taken no actions which could reasonably be viewed as stigmatizing or which could substantially curtail Wright's employment opportunities.

■ Whenever a government employee is involuntarily terminated or suspended, some stigma attaches which may affect the employee's future employment; however, this ordinary stigma does not give rise to a violation of the employee's liberty interest. *Ratliff v. Milwaukee,* 795 F.2d 612, 625 (7th Cir.1986). To be sufficiently stigmatizing, the "remarks must not merely be

---

**4.** Defendants do not dispute that a suspension with pay is a sufficiently unfavorable employment decision in this context. The Supreme Court has stated that a discharge is not necessary. *D'Acquisto,* 640 F.Supp. at 610–11. An action will suffice as an unfavorable employment decision if it raises the likelihood that potential employers will view the defamation as serious enough to affect employability. *Id.* at 611.

unflattering or defamatory but carry a serious stigma such as dishonesty, immorality, or thoroughly unprofessional conduct." *Dziewior v. Marengo,* 715 F.Supp. 1416, 1424 (N.D.Ill.1989). The February 5 letter contains an allegation relating to Ms. Wright's purchasing practices and says "two of the purported signatures contained on the purchase order ... are not the signatures of those individuals, nor anyone authorized by them to sign on their behalf." (cplt. ex. A). This allegation, suggesting that plaintiff forged signatures to authorize purchases, is clearly one of dishonesty. Thus, we reject defendants' assertion that the February 5 letter articulated reasons that "are not the type of charges which attack plaintiff's reputation or good name." (Defts' Memo. in Support of Motion to Dismiss, p. 9). We have no difficulty accepting that a public charge of forgery could foreclose employment opportunities for Wright.

The question remains, however, whether plaintiff has sufficiently alleged that the stigmatizing material was made public, so as to implicate a liberty interest in future employment. Plaintiff claims that the February 8 scene and the February 5 letter are inseparable, and should be viewed together to satisfy the publication requirement. Plaintiff is primarily relying on the charges in the February 5 letter to show defamation and stigma, and on the February 8 scene to show publication. The effects on plaintiff's liberty interest of the February 8 scene and the February 5 letter will be analyzed separately.

Wright alleges that many people were present at the February 8 scene where she was allegedly called a "bitch" by Thomas, and that this scene satisfies the publication requirement. Even assuming that it was sufficiently "public", however, there is no allegation that anything false and defamatory was said by Thomas.[5] Without allegations of falsity there can be no defamation, and thus there can be no liberty deprivation. *Codd,* 429 U.S. at 627, 97 S.Ct. at 884. Further, while perhaps humiliating and offensive, there are no allegations that the February 8 scene involved such stigma as dishonesty, immorality or thoroughly unprofessional conduct. Nothing that was alleged to have happened, including being called a "bitch" in front of others, can be viewed as attributing this type of stigma to plaintiff.[6] Thus, the February 8 scene fails to support a claim for deprivation of a liberty interest in future employment or otherwise.[7]

Next, we look to the circumstances surrounding the delivery and potential dissemination of the February 5 letter. We note that " 'the State remains free to terminate or decline to rehire a non-tenured employee for no reason at all or for stigmatizing, even false reasons privately stated.' " *Ratliff,* 795 F.2d at 627 n. 4, *quoting Dennis v. S & S Consolidated Rural High School District,* 577 F.2d 338, 343 (5th Cir.1978). To state a claim, then, plaintiff must allege that the February 5 letter was made public. *Bishop v. Wood,* 426 U.S. at 348, 96 S.Ct. at 2079; *Shlay v. Montgomery,* 802 F.2d 918, 924 (7th Cir.1986). Pub-

---

5. We do not doubt that calling a woman a "bitch" in the employment context can be extremely offensive; however, this description does not represent the constitutional standard in this due process context.

6. Furthermore, as Magistrate Judge Bucklo noted, "Ms. Wright has not alleged that [the word "bitch"] had any further meaning in this case or attempted to explain how its use in the context here related is likely to affect her post employment *reputation and ability to pursue her profession.*" Report and Recommendation of Magistrate Judge Elaine E. Bucklo, April 11, 1991, p. 4.

7. There is no allegation that future employers could become aware of the public display at the February 8 scene, and that is another reason the February 8 scene does not support a deprivation of liberty claim. "Some cases continue to suggest that defamation coupled with firing is a deprivation of liberty, *see, e.g., Perry v. FBI,* 781 F.2d 1294, 1300 (7th Cir.1986) (en banc); but since neither reputation nor government employment at will is an aspect of the liberty (or property) protected by the Fifth and Fourteenth Amendments, these cases are better explained as holding that to fire a worker to the accompaniment of public charges that make it unlikely that anyone will hire him for a comparable job infringes his liberty of occupation." *Colaizzi v. Walker,* 812 F.2d 304, 307 (7th Cir.1987); *see also Rosenstein v. Dallas,* 876 F.2d 392, 399 (5th Cir.1989) (Jolly, J., dissenting in part).

licity does not have to be widespread for defamatory material to deprive an individual of a protected liberty interest. An allegation that the stigmatizing information has been placed in a file to which other employers could have access might withstand a motion to dismiss. *See D'Acquisto,* 640 F.Supp. at 611 ("Plaintiffs allege that the reasons for a suspension go into their departmental personnel files and indeed remain there for five years regardless of the outcome of their hearings. They further allege that other law enforcement agencies have access to these files."); *see also Doe v. United States Dept. of Justice,* 753 F.2d 1092, 1113, n. 24 (D.C.Cir.1985) ("The 'public disclosure' requirement would also be satisfied if the Department placed Doe's termination memorandum in her personnel file and made that file available, even on a limited basis, to prospective employers or government officials."); *But see Clark v. Maurer,* 824 F.2d 565, 567 (7th Cir.1987); *see also Ceko v. Martin,* 753 F.Supp. 1418, 1427 (N.D.Ill.1990) (police department did not create a barrier to future employment by placing the allegedly stigmatizing information in personnel file; motion to dismiss granted).

Thus, in order to state a claim plaintiff must allege, at a minimum, that the false charges in the February 5 letter were *somehow* made public by the defendants. The closest plaintiff comes to such an allegation is by suggesting that the "public" nature of the February 8 scene serves to make public the allegedly defamatory letter. However, absent an allegation that the charges in the letter were somehow communicated at the February 8 scene, the February 8 scene cannot be the basis for an allegation that the false charges were communicated.

Plaintiff's failure to allege that the false charges in the letter were made available by the defendants, or have the potential to become available[8] to anyone other than plaintiff herself, is fatal to her claim that the letter has deprived her of a protected liberty interest. *See Loudermill,* 470 U.S. at 547 n. 13, 105 S.Ct. at 1496 n. 13; *see also Rodez v. Maywood,* 641 F.Supp. 331, 335 (N.D.Ill.1986).

With a sufficient allegation of publication there may have been a question of fact on the likelihood of impact on employment opportunities. Without it plaintiff has failed to state a claim for deprivation of a liberty interest.

## III. *Process Due to Plaintiff*

Under the circumstances, since we have decided that plaintiff has failed to state a claim for deprivation of either property or liberty interests, there is no process due the plaintiff. However, since defendants maintain, in any event, that plaintiff has received due process, we will address the process due, assuming plaintiff had stated a claim for deprivation of her liberty interests.

The extent that notice and hearing are required under due process varies according to the private interest to be protected and the nature of the government function involved. *Zaky,* 793 F.2d at 840. If the state threatens an individual's property or liberty interest, the due process remedy is the right to an opportunity to try to prevent the deprivation by a fair hearing to clear her name. *D'Acquisto* at 608; *Kukla v. Antioch,* 647 F.Supp. 799, 812 (N.D.Ill. 1986); *Doe,* 753 F.2d at 1113.

A name-clearing hearing "is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). In *Hostrop v. Board of Junior College Dist.,* 471 F.2d 488 (7th Cir.1972), *cert. denied,* 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973), the court found that "the resolution of these interests requires that plaintiff be given a notice of the charges against him, notice of the evidence upon which the charges will be based, a hearing before a tribunal possessing apparent impartiality, and a chance to present witnesses and con-

---

**8.** The February 5 letter may now be "public", but this is because the plaintiff has attached it to her complaint. An affirmative act of the plaintiff herself cannot be the basis for a claim of publication. *See Shlay v. Montgomery,* 802 F.2d 918, 924 (7th Cir.1986).

front adverse evidence at the hearing." *Hostrop,* 471 F.2d at 495.

Defendants point out that plaintiff has already received two "hearings" and, therefore, that she has received the process she is due. Plaintiff, on the other hand, claims that the hearings were constitutionally inadequate because the hearings consisted of nothing more than the plaintiff narrating her denial of the charges, because no evidence (other than the charges themselves) was presented against her by CCC, and because no determination was made by the decisionmaker of whether the charges in the February 5 letter were true or false.

A name-clearing hearing is:

an opportunity to counter the stigmatizing remarks made by his [or her] potential employer. It is of primary importance to remember that a name-clearing hearing is not a hearing to argue the merits of the defendants' decision not to hire the plaintiff, but to allow the plaintiff an opportunity to refute the stigmatizing charges in an atmosphere comparable to the circumstances surrounding the dissemination of the original stigmatizing charges.

*Dziewior,* 715 F.Supp. at 1424 (citation omitted); *Roth,* 408 U.S. at 573 n. 12, 92 S.Ct. at 2707 n. 12.[9]

*Dziewior* suggests that a general, narrative statement refuting the stigmatizing allegations is sufficient to satisfy the due process name-clearing requirements. *Dziewior,* 715 F.Supp. at 1425. Nevertheless, the hearing must be meaningful, providing at least an initial check against a mistaken decision to terminate or suspend an employee. *D'Acquisto v. City of Chicago,* 750 F.Supp. 342, 348 (N.D.Ill.1990) (*"D'Acquisto II"*).

Plaintiff alleges that the hearing was a sham, in which no decision was reached. We read plaintiff's complaint, with reason-

able inferences, as denying that she received a meaningful or fair hearing.[10] Deciding the meaningfulness, the fairness, or the impartiality of the hearings, among other things, would be inappropriate on a motion to dismiss were plaintiff to have otherwise stated a claim, which she has failed to do.

## CONCLUSION

For the above reasons, we grant defendants' motion to dismiss.

---

**9.** "The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons". *Roth,* 408 U.S. at 573 n. 12, 92 S.Ct. at 2707 n. 12.

**10.** In large part, plaintiff claims that her hearings were a sham, i.e. not a sufficient name-clearing hearing, because no decision was reached as to the merits of the allegations in the February 5 letter. As we have seen, such a decision on the merits is probably not required of a name-clearing hearing in order to satisfy due process. *See Dziewior,* 715 F.Supp. at 1424.